## MASON AND DANIEL v. BRAZIER.

1. A party to a suit cannot assign for error, the refusal of the court to sustain a motion, made by one who is not a party to the record.
2. The act of 1822, (Aikin's Digest, 272) is both an enlarging and restraining statute, and therefore controls the acts of 1807, sec. 32, (ib. 173) and of 1819, sec. 16, 18, (ib. 163, sec. 22, 23,) on the subject of motions against sheriffs.
3. To support a summary judgment, under the act of 1822, (Aikin's Digest, 272) it must appear on the record, that the receipt of the money by the sheriff was shown by matter of record; or the fact of the receipt must be found by a jury.
4. Under the act of 1826, (Aikin's Digest, 174, sec. 76) notice is necessary to be given to the sheriff or other officer; and he must be a party to the judgment.
5. No summary proceedings can be sustained under either of the acts of 1807, 1819, 1822, or 1826, unless the sheriff or other officer, is a party to the judgment.

Writ of error to the Circuit Court of Wilcox County.

JUDGMENT was rendered against Mason and Daniel, as securities of one Hill, sheriff of Wilcox county, on the motion of Brazier, for failing to pay over money collected by the sheriff on an execution issued at Brazier's suit, against Thomas E. Ellis, J. M. Hill (the sheriff,) H. C. Fountain, and William C. Garrison. The notice of the motion was issued to Hill, to the defendants, and to several other persons like the defendants, the securities for Hill, but was served on the defendants only. At the return term, the motion was entered against the sheriff and all his securities; the judgment entry recites that the parties came by their attornies when, the plaintiff discontinued his motion against the sheriff, and those of his securities on whom the notice was not served. The existence of the execution, its receipt by the sheriff, and his collection of the money, are stated; but it does not appear that these facts appeared by matter of record, or by any paper filed in the clerks office. No issue was claimed by the defendants, or directed by the court; and judgment was rendered for the plaintiff without the intervention of a jury. It also appears, from a bill of exceptions filed by one Pitts, that he appeared and moved to quash the execution on which

the money was collected, on the ground that the sheriff was a party to the execution.    This motion was resisted by the defendants, and was overruled.

The errors assigned in this court, are,

1st.  The refusal to quash the execution.

2d.  Giving judgment without the intervention of a jury, and

3d.  Because no issue was joined between the parties.

PHELAN, for the plaintiff in error, in support of the second assignment, cited Aikin's Digest, 272, sec. 82.

PECK, contra.

GOLDTHWAITE, J.—1.  The motion, to quash the execution, was made by one who is not a party to these proceedings, and therefore has no appropriate connexion with this case; besides this, it was resisted by the party who now seeks to reverse the judgment for this error, which, if it be one, was committed at his instance.    This assignment cannot be sustained, because these defendants have no interest in correcting errors committed against one who has no connexion with them.

The examination of the other assignments requires a brief examination of all the statutes which authorize a summary proceeding against a sheriff and his securities.

The counsel for the plaintiff in error, has particularly called our attention to the first section of the act of 1822, which he asserts governs this case, and under which it is essential that the receipt of the money by the sheriff, should be first ascertained by a jury; without which, the judgment is not warranted.    This section is in these words:  " Whenever a motion shall be made against any officer of any of the courts of this State, for not paying over money received by him in his official capacity, *and the receipt of the same shall not appear by the record, or by any paper filed in the clerks office,* it shall be the duty of the court to cause an issue to be made up and tried by the jury attending the court; and in case it shall be found by the jury, that the same has been received by the officer, 'against whom the motion shall be made, judgment shall be rendered by the court

against the said officer fer the principal interest and damages, as are now in such cases directed by law. (Aikin's Digest, 272.) The apparent necessity for this enactment, and its proper construction will be best shown by collating it with the statutes in force at the time. The seventy-fourth section of the act of 1807, directs, "if any sheriff, or other officer, shall *make return* on any writ of *fieri facias* or *venditioni exponas*, that he hath levied the debt, damages or costs, as in such writ is required, or any part thereof, and shall not immediately pay the same to the party to whom the same is payable, or to his attorney; or shall *return* upon any writ of *capais ad satisfaciendum*, or attachment for not performing a decree in chancery, for payment of any sum of money, that he hath taken the body or bodies of the defendant or defendants; and hath the same ready to satisfy the money in such writ mentioned, and shall have actually received such money of the defendant or defendants, or have suffered him, her or them to escape, with the consent of such sheriff, under-sheriff, or officer, and shall not immediately pay such money to the party to whom the same is payable, or his attorney, then, and in either of the said cases, it shall be lawful for the creditor, at whose suit such writ of *fieri facias*, *venditioni exponas*, *capias ad satisfaciendum*, or attachment shall issue, upon a motion made at the next succeeding court from whence such writ shall issue to demand judgment against such sheriff, officer or under-sheriff, *or securities of such under-sheriff*, for the money mentioned in such writ, or so much *as shall be returned*, levied on such writs of *fieri facias* or *venditioni exponas*, with interest thereon, at the rate of fifteen per centum, per annum, from the return day of the execution, until the judgment shall be discharged; and such court is hereby authorized and required to give judgment accordingly, and to award execution thereon : *Provided,* such sheriff or officer have ten days previous notice of such motion." (Aikin's Dig. 173.) This act evidently contemplates a *return* of the execution as essential to authorize a motion against the officer, and of course, this return could only appear *by the record, or by some paper filed in the clerk's office.*

The sixteenth section of the act of 1819, seems to have been intended to remedy one of the omissions of the act of 1807. It directs, "that it shall be the duty of the sheriffs of the counties throughout this State, respectively, whenever any execution shall be placed in their hands, to proceed to levy the same, and make sale of the property thus levied on, in such times as by law is directed; and shall pay over the amount obtained by such sale to the party or parties entitled to the same, on the application of such party or parties, or within ten days thereafter, under the penalty of forfeiting six per centum per month, for each and every month such sheriff shall fail to pay over such money collected as aforesaid." (Aikin's Digest 163, sec. 22.)

The seventeenth section of this act is omitted in Aikin's Digest, in consequence of a slight change as to the time of returning process; but the corresponding enactment is found in page 279, sec. 119, which was passed in 1821, and is in these words: "it shall be the duty of the sheriffs in the several counties in this State, to return all writs and executions to the clerk's office from which they issued, at least three days previous to the term of the court to which they shall be returnable; and if any sheriff shall fail to return any writ or execution, according to the provisions of this act, he shall be liable to all the penalties provided by the laws now in force, for failing to return any writ or execution to the first day of the term of the court to which they are returnable."

Having thus shown the enactment which has taken the place of the 17th section, we will now transcribe the 18th; this provides, "that when any sheriff shall fail to perform the duties required of him by this act, the person or persons aggrieved, *may move against such delinquent sheriff and his securities in office*, for the amount he has failed to pay over as aforesaid; *or for failing to return the execution in manner as above directed*, in the court from which such execution had issued, on giving three days notice of such motion *to such delinquent sheriff or his securities in office: Provided, however*, That time may be given to such delinquent sheriff to make his defence, upon good cause shown to the court before whom such motion may be made."

Mason and Daniel v. Brazier.

It will now be perceived that the act of 1819, went much farther than that of 1807, both with respect to the facts which would authorize the motion, as well as the penalty inflicted. It will also be observed, that the first authorizes a judgment against securities, *only of the under sheriff*, while the latter permits it to be rendered against the sheriff *and his securities* when notice is given to the sheriff *or* his securities. It is certain that neither of these acts make an inquiry before a jury, essential to support a judgment by the court; it may be admitted that the defendants, in such a motion, could not legally be debarred from a jury trial if they thought proper to claim it; but it is plain that the court might entertain and decide the motion; if no such jury trial was claimed. Under this view, the statute of 1822, would be entirely without effect, unless it is construed as a restraining act, *if the previous acts of* 1807 *and* 1819, *give the summary remedy when money is made on an execution without proceeding to sell the defendant's property*. We incline, however, to the opinion that neither of the previous acts extended thus far, because the act of 1807 contemplates a *return of the execution* in all cases, and the terms of the act of 1819, only extend to money *obtained by sale*. Admitting this to be the proper construction of these acts, it then seems clear that the act of 1822, was intended to cover all cases where money should be received by an officer on an execution, while, at the same time, it distinctly pointed out those cases in which the court could render the judgment of itself, in the absence of the claim of a jury trial, and then, in which it could only render judgment after the facts were ascertained by a verdict. If the receipt of the money appeared by the record or by some paper filed in the clerk's office, to use the terms of the act, then the court could proceed; but in all other cases the facts, from which the breach of duty was to be inferred, were to be sustained by a verdict to authorize a judgment under this enactment; and as it thus both enlarges and restrains the previous legislation on this subject, it must be considered as controlling and governing the acts of 1807 and 1819.

3. To apply this statute to the present case, it will appear that the summary jurisdiction of the circuit court, is not sustained; because the fact of the receipt of the money is not shown by any matter of record, and there was no verdict ascertaining the existence of the fact of the money having been received; one or the other of these matters being made requisite by the act.

4. It only remains to consider whether the judgment can be sustained under the act of 1826. The first section of which, provides, ''that whenever any clerk, sheriff or coroner shall fail or refuse to pay over any money received or collected by him, upon any execution, on the application of the plaintiff or plaintiffs, his, her or their attorney or agent, it shall be lawful for the court to which the said execution shall be returnable, upon one day's notice being given to said clerk, sheriff or coroner, and on motion of the plaintiff or plaintiffs in execution to render judgment against the clerk, sheriff, or coroner, thus failing, and his security, or any or either of them for the amount of money thus received, together with five per cent. upon the amount of the said execution, as damages for each and every month for which the said money shall have been detained, after demand made; together with costs of suit.'' [Aik. Dig. 174 S 76.] This, certainly is very comprehensive, and might be considered as entirely superseding all other enactments on this subject, if it was not, that the one day's notice is required to be given *to the clerk, sheriff, or coroner,* while the act of 1819, as before shown, and the act of 1822, authorizes a judgment, when *three* days notice is given to the sheriff *or his securities.* We have already held in the case of Duval v. Orr supra, that a judgment under this statute cannot be supported, unless the sheriff is a party to the motion, and unless notice is given to him. It therefore follows, that this judgment cannot be supported under the act of 1826, because no notice was given to Hill, the sheriff.

5. This disposes of the case so far as covered by the assignments of error, but there is yet, one objection to this judgment, to be noticed, which is conclusive against remanding the case. Under none of the statutes can proceedings of this summary

character be supported, unless the sheriff is a party to the judg-ment. The act of 1807, only authorizes judgment against the securities of the under-sheriff; that of 1819, against the sheriff and his securities; the act of 1822 does not enlarge the act of 1819, in this particular; and the act of 1826, only authorizes the rendition of judgment against the sheriff and his securities, or any one of them. In this case the notice was not served on the sheriff, and though he appeared by attorney the motion was afterwards discontinued as to him. This, in effect, was a dis-continuance of the motion; and, as it cannot be revived without new proceedings, it would be useless to remand the cause.

Let the judgment be reversed.